WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Buonarigo,<br><br>  Plaintiff,<br><br>v.<br><br>BJ's Tavern LLC,<br><br>  Defendant. | No. CV-19-08037-PCT-JAT<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 47). Plaintiff responded, (Doc. 50), and Defendant replied (Doc. 58). The Court now rules.

**I.  BACKGROUND**

The following facts are either undisputed or recounted in the light most favorable to Plaintiff, the non-movant. *Ellison v. Robertson*, 357 F.3d 1072, 1075–76 (9th Cir. 2004).

On the evening of November 10, 2017, Plaintiff and his friend, J.L., visited Lake Havasu with their respective girlfriends to celebrate Veteran's Day weekend. (Doc. 47 at 3). They went to dinner at a local restaurant where Plaintiff had two drinks with his meal. (Docs. 47 at 3; 50 at 13). After dinner, Plaintiff's party went to Defendant's bar, BJ's Tavern ("BJ's"). (Doc. 47 at 3).

Just before 1:00 a.m. on November 11, 2017, a fight broke out inside the bar involving J.L. (*Id.*). BJ's staff detained J.L. and called Lake Havasu City Police. (*Id.*). While waiting for the police, BJ's staff handcuffed J.L. and held him on the sidewalk in front of the bar. (*Id.* at 4). Plaintiff, who was not involved in the fight went looking for J.L.

and found him detained in front of BJ's. (*Id.*). Plaintiff began speaking with the BJ's employee who was detaining J.L. requesting that J.L. be released so Plaintiff could take him home. (*Id.*). While he was speaking with the BJ's employee about J.L., three men—B.T., B.J., and E.B.—tackled Plaintiff to the ground, struck him, and held him there until the police arrived. (Docs. 47 at 4–6; 50 at 4).

When the police arrived, they handcuffed Plaintiff and began investigating what happened. (Doc. 47 at 6). While Plaintiff was handcuffed, Plaintiff alleges that a BJ's employee told him: "If you don't sue [BJ's], I won't press charges on you." (Doc. 50 at 9 (citing Doc. 54-3 at 15)). Plaintiff responded by saying "go ahead and press your charges, because I'm definitely going to sue [BJ's]." (*Id.*). Ultimately, Plaintiff was released after being cited with criminal misdemeanors for disorderly conduct and assault. (Doc. 47 at 6).

Plaintiff later pled not guilty to the charges against him. (*Id.* at 7). Because of his veteran status, Plaintiff qualified for and participated in a special diversion program available to veterans. (*Id.*). As part of this diversion program, Plaintiff performed community service, submitted to drug and alcohol screens, and attended an alcohol counseling program. (*Id.*). In exchange for completing the diversionary program, the charges against Plaintiff were dismissed with prejudice. (*Id.*).

Plaintiff then filed a complaint with this Court on February 6, 2019. (Doc. 1). Plaintiff amended the initial complaint, (Doc. 13), and ultimately filed the Second Amended Complaint (Doc. 25) on July 15, 2010. Defendant answered, (Doc. 26), and filed the instant Motion for Summary Judgment (Doc. 47). Plaintiff responded, (Doc. 50), and Defendant replied, (Doc. 58).

## II. LEGAL STANDARD

Summary judgment in favor of a party is appropriate when that party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated conversely, a party "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per

curiam).

The movant must first establish that there is no genuine dispute of material fact and that, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate the existence of any dispute of material fact. *Id.* at 323–24. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue of fact "could reasonably be resolved in favor of either party." *Ellison*, 357 F.3d at 1075. Material facts are those "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075–76 (citation omitted). However, the nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat the motion for summary judgment. *Anderson*, 477 U.S. at 247–48.

### III. ANALYSIS

Plaintiff asserts the following claims for relief against BJ's: (1) assault and battery via *respondeat superior*; (2) negligence via *respondeat superior*; (3) negligent hiring, training, and supervision; and (4) malicious prosecution. (Doc. 25 at 4–7). Defendant asserts that it is entitled to summary judgment on the first three claims because "the men who allegedly assaulted Plaintiff (or who, alternatively, are alleged to have acted in a negligent manner in detaining him) were not employed by BJ's Tavern." (Doc. 47 at 1–2 (footnote omitted)). Defendant further asserts that it is entitled to summary judgment on the fourth claim because "BJ's employees did not initiate or take an active part in the prosecution of the criminal proceeding against Plaintiff," and "the criminal proceeding was not terminated in Plaintiff's favor." (*Id.* at 2 (internal marks omitted)). The Court will address these arguments in turn.

1       **a.      Employment Related Claims**

2       "Under the doctrine of *respondeat superior*, an employer is vicariously liable for
3  'the negligent work-related actions of its employees.'" *Kopp v. Physician Grp. of Arizona,*
4  *Inc.*, 421 P.3d 149, 151 (Ariz. 2018) (quoting *Engler v. Gulf Interstate Eng'g, Inc.*, 280
5  P.3d 599, 601 (Ariz. 2012)). "Vicarious liability results solely from the principal-agent
6  relationship: 'those whose liability is only vicarious are fault free—someone else's fault is
7  imputed to them by operation of law.'" *Id.* (quoting *Wiggs v. City of Phoenix*, 10 P.3d 625,
8  629 (Ariz. 2000)). Thus, under a theory of *respondeat superior*, one can only be held
9  vicariously liable for a party that is acting as their agent or employee. *See Wiggs*, 10 P.3d
10 at 629; *Jeter v. DISH Network Serv. LLC*, No. CV-19-05111-PHX-GMS, 2020 WL
11 3472549, at *2 (D. Ariz. June 25, 2020).

12      Similarly, "'[f]or an employer to be held liable for ... negligent hiring, retention, or
13 supervision,' one of its employees must commit a tort." *Ford v. Barnas*, No. CV17-2688-
14 PHX DGC, 2018 WL 5312912, at *2 (D. Ariz. Oct. 26, 2018) (quoting *Kuehn v. Stanley*,
15 91 P.3d 346, 352 (Ariz. Ct. App. 2004)); *see Petty v. Arizona*, No. CV-15-01338-PHX-
16 DLR, 2016 WL 4095835, at *1 (D. Ariz. Aug. 2, 2016) ("To state a claim for negligent
17 supervision, the plaintiff must allege that an employee committed a tort, that the defendant
18 employer had a reason and opportunity to act, and that the defendant failed to perform its
19 duty to supervise."). Thus, a business can only be held liable for negligent hiring, training,
20 and supervision if it employed the party that committed the tort at issue. *See Ford*, 2018
21 WL 5312912, at *3 (granting summary judgment on claims of negligent hiring, training,
22 and supervision because plaintiff failed to present evidence that defendant employed the
23 tortfeasor).

24      Defendant argues that it is entitled to summary judgment on Plaintiff's first three
25 claims because the men who tackled Plaintiff and held him until the police arrived were
26 not employees of BJ's. (*Id.* at 8–9). To support this argument, Defendant presents the
27 deposition testimony of three separate witnesses. First, A.C., the general manager of BJ's,
28 testified that the three men who tackled and held Plaintiff on the night at issue were not

BJ's employees. (Doc. 47-1 at 27–28, 34, 38). Next, C.M.C., the manager of BJ's, similarly said that the three men were not BJ's employees. (*Id.* at 48–50). Finally, one of the three men who tackled and held Plaintiff, B.T., testified that he was not employed by BJ's on the night at issue nor had he ever been employed by BJ's. (*Id.* at 54, 56).

Plaintiff responds that the three men were employed by BJ's on a contract basis on the evening at issue. (Doc. 50 at 13–14). Plaintiff relies on statements made by B.T. and A.C. that were captured by body-worn police cameras, and statements by B.T. made three years after the night at issue that were recorded by a private investigator. (*See* Doc. 50 at 13–14). Defendant argues that this evidence is inadmissible and, thus, does not create a genuine dispute of fact to defeat summary judgment. (Doc. 58 at 2–3). Defendant further argues that, even if the evidence was admissible, Plaintiff has not created a genuine issue of fact regarding the employment status of the three men because Plaintiff "does not even analyze what facts must be presented in order to establish an employer-employee relationship." (*Id.* at 3).

### 1. Admissibility of Plaintiff's Evidence

When arguing that the men who tackled and held him were BJ's employees, Plaintiff cites statements made by B.T. and A.C. on the night at issue that were captured by body-worn police cameras, and statements by B.T. made three years later that were recorded by a private investigator. (*See* Doc. 50 at 13–14). Defendant argues that these statements cannot be considered by the Court because they are inadmissible hearsay, and that the body-worn police camera footage has not been properly authenticated. (Doc. 58 at 2–3).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). "But '[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.'" *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)); *see* Fed. R. Civ. P. 56(c)(2). "If the contents of a document

can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* Similarly, a court may rely on unauthenticated video evidence in support of an argument against summary judgment if that evidence could be presented in an admissible form at trial. *See Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *8 (D. Ariz. Nov. 3, 2016); *Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2021 WL 1055197, at *5 n.4 (N.D. Cal. Feb. 16, 2021) (considering unauthenticated evidence at the summary judgment stage, in part, because it could be presented in an admissible form at trial).

Considering B.T.'s statements to the private investigator first, the statements may be hearsay because they are out-of-court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The contents of the statements, however, could be presented in an admissible form at trial. When speaking with the private investigator, B.T. said that both he and E.B. worked as security staff at BJ's during the period at issue. (Doc. 54-2 at 6–8, 12). While the statements to the private investigator may not be admissible, B.T. can be called to testify at trial and he could testify consistent with these out-of-court statements. Thus, the contents of B.T.'s statements can be considered on summary judgment because they could be presented in a form that would be admissible at trial. *See Fraser*, 342 F.3d at 1037 (holding that hearsay statements could be considered on summary judgment because the declarant could be called to testify to the contents of the statements at trial); *Lober v. Dejoy*, No. 20-15888, 2021 WL 1627026, at *1 (9th Cir. Apr. 27, 2021) (holding that a district court did not abuse its discretion by considering possible hearsay evidence on summary judgment, in part, because it was capable of being provided in an admissible form at trial); *Sandoval*, 985 F.3d at 667 (holding that a district court abused its discretion by not considering inadmissible hearsay evidence at the summary judgment stage because that evidence was capable of being provided in an admissible form at trial).

Defendant may argue that B.T. cannot testify consistent with his out-of-court

statements to the private investigator because B.T. stated under oath that he was never employed in a security capacity by BJ's. (*See* Doc. 47-1 at 54). Yet, while arguing that the evidence in its current form is inadmissible, Defendant has not shown that the instant evidence cannot be presented at trial in an admissible form. Because B.T. himself has given two different accounts of his relationship to BJ's, the Court cannot predict on summary judgment which version will be his testimony at trial. So, the Court may consider Plaintiff's evidence when deciding the Motion for Summary Judgment. *See In re SDG&E Consol. Cases.*, No. 17-CV-02433-BAS-JLB, 2021 WL 662259, at *5 (S.D. Cal. Feb. 19, 2021) (considering hearsay evidence at summary judgment stage because defendant had not shown that evidence could not be presented at trial in an admissible form).

Further, when B.T. was asked at his deposition about his statements to the private investigator, B.T. invoked his Fifth Amendment right not to testify. (*See* Doc. 54-1 at 4–6). Assuming he invokes his Fifth Amendment right if asked similar questions at trial, Plaintiff could seek an adverse inference instruction. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (holding that "in civil proceedings adverse inferences can be drawn from a party's invocation of this Fifth Amendment right"). A jury could credit such an adverse inference to find that B.T. was an employee of BJ's on the night at issue.

Similarly, B.T.'s and A.C.'s statements on the body-worn police camera footage may be hearsay, but because B.T. and A.C. could be called at trial, the Court is not barred from considering the contents of these statements when deciding the Motion for Summary Judgment. Further, Defendant argues that the body-worn police camera footage cannot be considered because it has not been authenticated. (Doc. 58 at 3); *see* Fed. R. Evid. 901. However, "[t]he fact that [Plaintiff's] exhibits are unauthenticated does not bar their consideration for the limited purpose of opposing [Defendant's] Motion[] for Summary Judgment." *Ericson*, 2016 WL 6522805, at *8. Because the contents of the body-warn police camera footage could be presented in an admissible form at trial, the Court may consider the footage at the summary judgment stage. *Id.*; *Sandoval*, 985 F.3d at 666.

Thus, while the evidence at issue may not currently be in an admissible format, the Court may consider its contents in opposition to a motion for summary judgment because it could be presented in an admissible form at trial.

### 2. Factors to Establish an Employer-Employee Relationship

Defendant further argues that Plaintiff has not created a genuine issue of fact regarding the employment status of the men who tackled Plaintiff because Plaintiff "does not even analyze what facts must be presented in order to establish an employer-employee relationship." (Doc. 58 at 3). Defendant goes on to argue that Plaintiff has the burden to prove his claim and, because he has not presented evidence to do so at this stage, Defendant is entitled to summary judgment. (*Id.* at 4).

The Arizona Supreme Court has established criteria that must be evaluated in determining whether an employer-employee relationship exists:

> 1. The extent of control exercised by the master over details of the work and the degree of supervision; 2. The distinct nature of the worker's business; 3. Specialization or skilled occupation; 4. Materials and place of work; 5. Duration of employment; 6. Method of payment; 7. Relationship of work done to the regular business of the employer; 8. Belief of the parties.

*Santorii v. MartinezRusso, LLC*, 381 P.3d 248, 252 (Ariz. Ct. App. 2016) (quoting *Santiago v. Phx. Newspapers, Inc.*, 794 P.2d 138, 142 (Ariz. 1990)). "The fundamental criterion is the extent of control the principal exercises or may exercise over the agent." *Santiago*, 794 P.2d at 141.

Defendant is correct that Plaintiff did not conduct an analysis of the above criteria in his response. (*See* Doc. 50). As the non-movant, however, Plaintiff is not required to prove his claims at this stage to defeat summary judgment. Instead, a non-movant "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *S. Cal. Gas Co.*, 336 F.3d at 888. In moving for summary judgment, it is Defendant's burden as the movant to establish that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Thus, Plaintiff's failure to analyze the above factors does not

necessarily mean that summary judgment should be granted in Defendant's favor.

### 3. Conclusion Regarding Employment Claims

Because the contents of Plaintiff's evidence could be presented in an admissible form at trial, the Court will consider the statements made to the private investigator and the statements made in the body-worn police camera footage. In these statements, at least one of the men who injured Plaintiff, B.T., admits that he was a BJ's employee on the night at issue. Assuming this evidence is converted to an admissible format at trial, that admission creates a genuine dispute of fact with Defendant's evidence in which B.T. and others allege that none of the men who injured Plaintiff were employees on the night in question.

Additionally, B.T.'s invocation of his Fifth Amendment right when asked about his employment status with BJ's could lead Plaintiff to seek an adverse inference instruction. *See Doe*, 232 F.3d at 1264. The possibility of such an adverse inference instruction further creates a dispute to be resolved at trial.

Further adding to the dispute over the employment status of the men who injured Plaintiff is the "sequence of events" on the night at issue. (Doc. 50 at 14). The parties do not dispute that B.T. intervened in a fight inside of the bar, tackled Plaintiff when Plaintiff was attempting to secure his friend's release from the custody of BJ's staff, and detained Plaintiff until the police arrived. (Docs. 47 at 4–5; 47-1 at 55–56; 50 at 14). The Court agrees with Plaintiff's argument that these actions add to the existing factual dispute regarding the employment of at least one of the men who injured Plaintiff.

Because Plaintiff has shown that "the evidence, taken as a whole, could lead a rational trier of fact to find in [his] favor," the Court will deny Defendant's motion for summary judgment on the employment related claims. *S. Cal. Gas Co.*, 336 F.3d at 888.

### b. Malicious Prosecution Claim

Defendant asserts that it is entitled to summary judgment on Plaintiff's claim for malicious prosecution because "BJ's employees did not initiate or take an active part in the prosecution of the criminal proceeding against Plaintiff," and "the criminal proceeding was not terminated in Plaintiff's favor." (*Id.* at 2 (internal marks omitted)). Plaintiff responds

that there are questions of fact as to BJ's employees' roles in the initiation of criminal charges against Plaintiff, and that the case against Plaintiff ended in the most favorable way possible, dismissal with prejudice. (Doc. 50 at 15).

To successfully assert a claim for malicious prosecution, "[t]he plaintiff must prove [1] damage by a criminal prosecution, [2] which terminated in his favor, [3] with defendant as prosecutor or complaining witness [4] acting without probable cause and [5] with malice." *Bearup v. Bearup*, 596 P.2d 35, 36 (Ariz. Ct. App. 1979) (citing *Slade v. City of Phoenix*, 541 P.2d 550 (Ariz. 1975); *Overson v. Lynch*, 317 P.2d 948 (Ariz. 1957)). Defendant only challenges the second and third elements. The Court will examine whether the prosecution was terminated in Plaintiff's favor.

### 1. Terminated in Plaintiff's Favor

"The ultimate legal decision with respect to what constitutes a favorable termination rests with the judge." *Frey v. Stoneman*, 722 P.2d 274, 279 (Ariz. 1986) (citing Restatement (Second) of Torts §§ 673, 674). There is no per se rule as to what constitutes a favorable termination when there has been no adjudication of the merits, but the ultimate question is "whether, under the particular circumstances and merits of the underlying case, termination was actually favorable." *Id.* at 278. "A termination without a trial on the merits may be a favorable termination of the litigation if [the circumstances] indicate the innocence or freedom from liability of the defendant." *Id.* at 279. "While a plaintiff's dismissal of a civil action may under some circumstances be considered a termination of the action in favor of a defendant, not all voluntary dismissals constitute favorable termination." *Lane v. Terry H. Pillinger, P.C.*, 939 P.2d 430, 432 (Ariz. Ct. App. 1997). When a dismissal "'is merely a procedural or technical dismissal it is not favorable.'" *Id.* (quoting *Frey*, 722 P.2d at 278).

Defendant argues that, because the charges against Plaintiff were dismissed due to Plaintiff's participation in and completion of a diversion program, the proceeding was not terminated in Plaintiff's favor. (Doc. 47 at 11–12). Plaintiff responds that the proceeding was terminated in his favor because the charges against him were dismissed with prejudice, because there are no facts supporting his guilt, and because Defendant has presented no

evidence that Plaintiff's charges were dismissed for any reason other than innocence. (Doc. 50 at 16–19).

To begin, as noted in Plaintiff's response, prosecutors in Arizona may stipulate to the dismissal of a party's charges with or without prejudice following pretrial diversion. (*See id.* at 18 (citing Ariz. R. Crim. P. 38.1, 38.3)). Thus, the dismissal of Plaintiff's charges without prejudice does not support the argument that the charges were dismissed because of Plaintiff's innocence rather than because of the successful completion of a pretrial diversion program.

Next, Plaintiff argues there is no factual support for his guilt of either disorderly conduct or assault. (*Id.* at 17). It is not this Court's role to determine the facts of the underlying charges, however, but instead the Court examines the facts surrounding the dismissal of the charges at issue. *See Lane*, 939 P.2d at 434–35 (examining the facts surrounding the termination, not the underlying charge); *Milke v. City of Phoenix*, No. CV-15-00462-PHX-ROS, 2016 WL 5339693, at *10 (D. Ariz. Jan. 8, 2016) (same); *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1134 (D. Ariz. 2013) (same). Thus, the facts surrounding Plaintiff's underlying charges will not guide the Court's analysis of the termination.

Plaintiff additionally asserts that Defendant has presented no evidence that Plaintiff's charges were dismissed for any reason other than innocence. (Doc. 50 at 17–19). Defendant, however, presented Plaintiff's own deposition testimony in which Plaintiff agrees that "as a result of [the diversion program], the two charges, one for assault and one for disorderly conduct, were then dismissed in exchange for [Plaintiff completing the diversion program]." (Doc. 47-1 at 6). Thus, the evidence provided by Defendant amounts to an admission that the charges against Plaintiff were dismissed without regard for his guilt or innocence.

Further, Plaintiff cites *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004), to argue that his malicious prosecution claim should survive summary judgment because the underlying criminal charges against him were the result of fraudulent conduct by Defendants. (*See* Doc. 50 at 17–18). Plaintiff uses the following language from *Awabdy*

to support his argument:

> When such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt.

*Awabdy*, 368 F.3d at 1068. The instant case, however, is easily distinguished from *Awabdy*. The dismissal at the core of *Awabdy* was a "a dismissal in the interests of justice" which the *Awabdy* court found "reflect[ed] the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Id.* Here, the dismissal did not reflect the opinion that the action lacked merit. The dismissal, as admitted to by Plaintiff, was a result of the successful completion of a diversion program.[1] Thus, the quoted proposition in *Awabdy* cannot support the weight Plaintiff gives it.

Finally, at oral argument, Plaintiff's counsel quoted *Kopp v. Physician Grp. of Arizona, Inc.* which states "[n]early seventy-five years ago, [the Arizona Supreme Court] held in *DeGraff v. Smith* that a dismissal with prejudice is a judgment on the merits that carries preclusive effect." *Kopp v. Physician Grp. of Arizona, Inc.*, 421 P.3d 149, 150 (Ariz. 2018). Plaintiff's counsel cited this quotation while arguing that the dismissal with prejudice of Plaintiff's charges necessarily means that the criminal action against Plaintiff was terminated in his favor. In the very same paragraph, however, the *Kopp* court goes on to say "we disavow our holding in *DeGraff* insofar as that case and its progeny conclude that a stipulated dismissal with prejudice 'operate[s] as an adjudication that [the dismissed party] was not negligent in the treatment of [the] plaintiff.'" *Id.* (quoting *Torres v. Kennecott Copper Corp.*, 488 P.2d 477 (Ariz. Ct. App. 1971)). As it relates to this case, the Court reads *Kopp* to stand for the idea that a dismissal with prejudice does not necessarily operate as an adjudication that the dismissed party was innocent of the charged conduct.

---

[1] Plaintiff's counsel underscored this point at oral argument when he stated that the dismissal here was "guilt and innocence neutral."

In light of Plaintiff's admission and the lack of any evidence to the contrary, the Court finds that the charges against Plaintiff were dismissed due to his completion of a diversion program, rather than because of his innocence or freedom from liability, so the prosecution was not terminated in Plaintiff's favor. *See Frey*, 722 P.2d at 279; *see also Rodriguez v. Cty. of Los Angeles*, No. 816CV00674MCSSHK, 2021 WL 945250, at *2 (C.D. Cal. Jan. 25, 2021) (holding that dismissal pursuant to completion of a diversion program is not a favorable termination); *Taylor v. Gregg*, 36 F.3d 453, 455-56 (5th Cir. 1994) (same); *Berman v. City of Los Angeles*, No. CV192942DMGJEMX, 2020 WL 8512314, at *10 (C.D. Cal. Nov. 25, 2020) (same). Because the prosecution was not terminated in Plaintiff's favor, the Court need not address the other elements of malicious prosecution, and Defendant is entitled to summary judgment on this claim. *See Lane*, 939 P.2d at 435 (affirming grant of summary judgment to defendant on malicious prosecution claim because charges were not terminated in plaintiff's favor); *Milke*, 2016 WL 5339693, at *11 (dismissing malicious prosecution claim because charges were not terminated in plaintiff's favor).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 47) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's fourth claim (malicious prosecution) and **DENIED** as to all other claims.

Dated this 14th day of June, 2021.

James A. Teilborg
Senior United States District Judge